*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* J. JAMESON, Minor.

UNPUBLISHED
September 15, 2025
11:07 AM

No. 373556
Kalamazoo Circuit Court
Family Division
LC No. 2020-000087-NA

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating her parental rights to her minor child, JJ, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm).[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

JJ was born while child protective proceedings were pending involving two of respondent's older children. The Department of Health and Human Services (DHHS) petitioned for removal of the older children due to allegations of methamphetamine use around the children and poor living conditions. The trial court exercised jurisdiction over the children, removed them from respondent's care, and ordered respondent to comply with, and benefit from, a parent-agency treatment plan.

During the next few years, respondent participated in services including substance-abuse counseling, a psychological evaluation, family and individual counseling, a supportive-visitation program, and parenting classes. She initially made significant progress toward her sobriety. During this time, however, respondent gave birth to JJ, who was treated for suboxone withdrawal.

---

[1] The order also terminated the parental rights of JJ's father. Because he is not a party to this appeal, he will be referenced only as necessary to provide context for the facts underlying respondent's appellate arguments.

-1-

DHHS petitioned to have JJ placed into care, and, after a preliminary hearing, the trial court authorized the petition, but allowed JJ to remain with respondent. The petition was later amended in accordance with the parties' agreement to allow respondent to acknowledge that JJ's two older siblings were removed from her care because of her substance-abuse issues and that the barriers toward reunification had not been rectified.

Respondent continued to participate in services after JJ was born, however, DHHS petitioned to terminate respondent's parental rights to her two older children, citing her failure to benefit from services. Specifically, DHHS alleged that respondent failed to ensure that the children were taken to their appointments and took their medications. In addition, she declined to have the children returned to her care full time and was reliant on JJ's father although he had not rectified his own barriers to reunification. The trial court terminated respondent's parental rights to one of her older children under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g) (failure to provide proper care and custody when financially able to do so), and (j); the other child was placed in a guardianship.[2]

Meanwhile, JJ was removed from respondent's care, and the trial court changed the permanency planning goal from reunification to adoption because respondent had not benefited from her extensive services. Although respondent had participated in services for more than three years, with the exception of her significant progress involving her substance-abuse issues, she was not in a better position than she was when she began services, and her caseworker did not believe that she could be allowed unsupervised parenting time anytime soon. DHHS subsequently petitioned to terminate respondent's parental rights to JJ under MCL 712A.19b(3)(c)(*i*), (g), (i) (parental rights to one or more siblings terminated because of serious and chronic neglect or physical or sexual abuse, prior attempts to rehabilitate unsuccessful), and (j). On the first day of the termination hearing, DHHS amended the petition to also include MCL 712A.19b(3)(c)(*ii*) as a ground for termination. The trial court found there was clear and convincing evidence to terminate respondent's parental rights to JJ under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), and that termination was in JJ's best interests. This appeal followed.

## II. REASONABLE EFFORTS

Respondent claims that the trial court clearly erred by finding that DHHS provided reasonable services to facilitate reunification because DHHS failed to follow the psychological evaluation's recommendation to refer her to Acceptance and Commitment Therapy (ACT) services[3] or domestic-violence services. We disagree.

---

[2] A panel of this Court affirmed the termination. *In re Jameson*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 368074).

[3] ACT services are an "action-oriented approach to psychotherapy" that are designed to teach patients how "to stop avoiding, denying, and struggling with their inner emotions and, instead, accept that these deeper feelings are appropriate responses to certain situations that should not prevent them from moving forward in their lives." Psychology Today, *Acceptance and*

## A. STANDARD OF REVIEW

Because respondent failed to object to her parent-agency treatment plan or assert that the plan was inadequate before the trial court, her argument is unpreserved for appellate review. *In re Atchley*, 341 Mich App 332, 336-338; 990 NW2d 685 (2022). Unpreserved arguments are reviewed for plain error affecting the parent's substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

## B. ANALYSIS

Generally, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). "Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Sanborn*, 337 Mich App at 259 (quotation marks and citation omitted). DHHS must create a case service plan outlining the steps that it and the parent will take to rectify the conditions that led to intervention and achieve reunification. *In re Hicks*, 500 Mich at 85-86. A parent is required to both participate in the services *and* demonstrate that she adequately benefited from the services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "When challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264.

Respondent first claims that the trial court's reasonable-efforts finding was erroneous because DHHS did not refer her to ACT services. The record shows that DHHS referred respondent for services at Building Resiliency in Substance Abusing Families (BRISA) to address her need for "more psychological resilience"—a goal outlined in her psychological evaluation. Respondent participated in BRISA for more than two years, engaged in substance-abuse counseling, and was referred, with one of her other children, to additional mental-health treatment. Yet respondent failed to benefit from these services, which was the primary reason behind the trial court's decision to terminate her parental rights. On appeal, respondent does not define or explain what ACT services are. Nor does she explain how ACT services would have helped her apply what she had already been taught by her various service providers. She merely asserts that, had she received ACT services, JJ's removal could have been avoided or she may have been reunited with him. This is insufficient to establish that she would have fared better had she received ACT services. Given that respondent participated in several services to support her mental health and

---

*Commitment Therapy* <https://www.psychologytoday.com/us/therapy-types/acceptance-and-commitment-therapy> (accessed July 15, 2025).

"psychological resilience," but failed to demonstrate any benefit from them, respondent has failed to show that plain error occurred.

Respondent's claim regarding DHHS's failure to refer her for domestic-violence services is equally unavailing. The foster-care caseworker testified that there had been two incidents of domestic violence involving respondent; one incident involved one of respondent's nonresident children who was unconnected to the child protective proceedings, and the other involved JJ's father. The record does not show, however, that domestic violence was a barrier to reunification. JJ was removed from respondent's care not because of domestic violence, but because JJ's father continued to test positive for amphetamines and respondent allowed him to stay at her apartment in violation of the trial court's order.

And even if reasonable efforts should have included domestic-violence services, respondent has not established that she would have fared better had she been offered such services. The trial court terminated respondent's parental rights because she failed to benefit from the services outlined in her parent-agency treatment plan. Given that respondent struggled to retain skills or benefit from the services that were offered to her over several years, it is unlikely that she would have fared better with additional services. Moreover, although respondent was not specifically referred to domestic-violence services, the caseworker referred her to trauma-focused therapy because he believed it could help her address being a victim of domestic violence. Because respondent has not shown that she would have fared better with domestic violence services, there is no plain error warranting reversal.

## III. STATUTORY GROUNDS

Respondent next argues that the trial court erred by terminating her parental rights because the conditions that served at the basis of termination were new or different from those to which she pleaded at the adjudication, and the trial court relied on inadmissible hearsay evidence as grounds for termination. We disagree.

## A. STANDARDS OF REVIEW

In the trial court, respondent objected generally to the admission of hearsay testimony. However, she did not challenge whether the trial court or DHHS relied on legally admissible evidence with respect to conditions new or different from those that led the trial court to take jurisdiction. Thus, her argument in this regard is unpreserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Unpreserved arguments are reviewed for plain error affecting the parent's substantial rights. *In re Utrera*, 281 Mich App at 8-9.

To the extent that respondent challenges the trial court's statutory grounds determination, this argument is preserved. *In re TK*, 306 Mich App at 703. We review a trial court's finding of statutory grounds for termination for clear error. *In re Atchley*, 341 Mich App at 343. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

## B. ANALYSIS

MCR 3.977 "applies to all proceedings in which termination of parental rights is sought." MCR 3.977(A)(1). If termination does not occur at the initial dispositional hearing and the case later proceeds to termination on grounds that formed the basis for adjudication, the rules of evidence—except those for privilege—typically do not apply at the termination hearing. See MCR 3.977(H); MCR 3.977(H)(2). Instead, "all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value." MCR 3.977(H)(2). But at a termination hearing on "a supplemental petition that seeks to terminate the parental rights of a respondent over a child already within the jurisdiction of the court on the basis of one or more circumstances new or different from the grounds that led the court to take jurisdiction," the trial court's findings must be based on "legally admissible evidence." MCR 3.977(F)(1)(b).

DHHS initially petitioned to terminate respondent's parental rights to JJ under MCL 712A.19b(3)(c)(*i*), (g), (i), and (j). During the first day of the termination hearing, DHHS moved to add MCL 712A.19b(3)(c)(*ii*) as a statutory ground for termination, claiming that other conditions existed to terminate parental rights, including housing, domestic violence, mental health and emotional stability, and parenting. The trial court found that respondent was substance-free and had adequate housing, and neither domestic violence nor respondent's mental health or emotional stability factored into the trial court's termination ruling.

Instead, the trial court terminated respondent's parental rights to JJ because respondent failed to demonstrate that she had benefited from her treatment plan, particularly with respect to parenting skills. This was not a new or different condition than what was alleged in the original petition. The circumstances leading to the trial court's exercise of jurisdiction over JJ were that his two older siblings had been removed from respondent's care because the barriers to reunification had not been completely resolved. These unresolved barriers—which eventually resulted in the termination of respondent's rights to JJ's older sister—included respondent's inability to "demonstrate that she had adequately benefited from services designed to help her with her parenting skills." *In re Jameson*, unpub op at 8. Respondent pleaded to these circumstances at the adjudication. Thus, the trial court's primary reason for terminating respondent's parental rights to JJ was encompassed by her plea that the barriers to her reunification with her other two children had not been completely resolved. See *In re Gilliam*, 241 Mich App 133, 136-138; 613 NW2d 748 (2000). Accordingly, to the extent that the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), the Michigan Rules of Evidence—other than those related to privilege—did not apply. See MCR 3.977(H); MCR 3.977(H)(2). The trial court, therefore, was permitted to rely on hearsay evidence when rendering its termination decision.

Additionally, the trial court did not clearly err by finding grounds for termination under MCL 712A.19b(3)(c)(*i*). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "[T]he trial court . . . may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.997(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.997(H)." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). "Only

one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights[.]" *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Termination under MCL 712A.19b(3)(c)(*i*) is appropriate if the trial court finds:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

It is undisputed that more than 182 days elapsed between trial court's issuance of the initial dispositional order with respect to JJ and the termination of respondent's parental rights. The barriers that prevented respondent's reunification with her older children—namely, respondent's lack of parenting skills—continued to exist. The caseworker testified that although respondent had participated in therapeutic services, supportive visitation, parenting classes, and years of supervised parenting time with family-support workers, respondent had not demonstrated that she benefited from these services. The caseworker noted respondent's continued inability to recall and apply parenting skills, which required repetition and reminders during parenting time, as well as her inability to effectively discipline JJ, provide him with nutritious meals, and engage with him during visits. Despite her participation in services, respondent had not successfully addressed her parenting deficiencies, and her visitation never progressed to unsupervised parenting time. Given the length of time respondent had been participating in services, and JJ's young age, there was no reasonable likelihood that respondent would be able to rectify the conditions that led to adjudication within a reasonable time. Because the record supports the trial court's decision to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), there is no error.[4]

## IV. BEST INTERESTS

Next, respondent asserts that the trial court erred by finding that it was in JJ's best interests to terminate her parental rights because DHHS failed to make reasonable efforts toward reunification and the statutory grounds for termination were not proven by legally admissible evidence. We disagree.

---

[4] As noted, the trial court also terminated respondent's parental rights under MCL 712A.19b(c)(*ii*) and (j). Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights," *In re Ellis*, 294 Mich App at 32, even if the trial court erred by terminating respondent's rights on these grounds, this error does not warrant reversal. Regardless, we find that because the record shows respondent failed to benefit from her parent-agency treatment plan, or exhibit adequate, consistent parenting skills, there was a reasonable likelihood that JJ would be harmed if returned to respondent's care. Accordingly, termination was also proper under MCL 712A.19b(3)(j).

## A. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

## B. ANALYSIS

As stated, respondent has failed to demonstrate that DHHS failed to provide reasonable services toward reunification or that the trial court relied on inadmissible evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Thus, there is no merit to respondent's claims. Moreover, the record supports the trial court's finding that termination was in JJ's best interests.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346.

When determining best interests:

> [A] court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Although respondent and JJ shared a close bond, the trial court found it was in JJ's best interests to terminate respondent's parental rights because she lacked stability, JJ had been in foster care for nearly 15 months, and he was thriving in his foster-care placement. The record supports the trial court's findings. The caseworker testified that JJ was doing well in his foster-care placement, was "very bonded" with his foster parents and siblings, and his foster parents were willing to provide a permanent home for him. By contrast, the caseworker stated that respondent failed to retain and implement the parenting strategies she learned during her court-ordered services, failed to adequately feed or discipline JJ, and that JJ was behind in his developmental milestones after being in respondent's care. Because respondent has failed to show that the trial court's best-interest determination was clearly erroneous, we conclude that the trial court properly terminated respondent's parental rights.

Affirmed.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett